**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **RUBEN PALAZZO,** | * | |
| Plaintiff | * | |
| v. | * | Civ. No. DLB-20-2392 |
| **BAYVIEW LOAN SERVICING LLC,** *et al.*, | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

In 2016, Ruben Palazzo filed a Chapter 13 bankruptcy proceeding, and soon thereafter, he initiated an adversary proceeding against Bayview Loan Servicing LLC n/k/a Community Loan Servicing LLC ("Bayview") and Manufacturers and Traders Trust Company d/b/a M&T Bank ("M&T") (collectively, "the defendants") asserting that they repeatedly sought sums that he did not owe. The adversary proceeding eventually was withdrawn, and Palazzo's four-count amended complaint is now pending before this Court. In it, he alleges that the defendants violated the provisions of his confirmed Chapter 13 Plan and other court orders and should be held in contempt (Count I); that they violated the automatic stay under 11 U.S.C. § 362 (Count II); that they violated Maryland's Consumer Debt Collection Act, Md. Code Ann., Com. Law § 14-201 *et seq.*, and Maryland's Consumer Protection Act, Com. Law. § 13-101 *et seq.* (Count III); and that Bayview violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count IV).

Pending before the Court are cross-motions for summary judgment on Counts I and II. ECF 35 & 36. The parties fully briefed the motions. ECF 37–40, 45–46, 52. A hearing on the motions for summary judgment was held before the bankruptcy court on December 20, 2021. ECF 66. For the following reasons, the Court grants the defendants' motion for summary judgment on Counts I and II. Palazzo's summary judgment motion is denied.

**I.     Background**

In 2007, Palazzo obtained a mortgage loan from SunTrust Mortgage ("SunTrust"). ECF 35-2.  Palazzo fell delinquent on his loan payments and entered into a repayment agreement with SunTrust on December 27, 2010.  *See* ECF 35-8, at 54.  On December 16, 2013, SunTrust transferred servicing of the loan to Bayview, with M&T servicing the loan on Bayview's behalf. *See* ECF 35-3.

In February 2016, Palazzo initiated a Chapter 13 case in bankruptcy court.  *See* ECF 35-7, at 2.  On April 5, 2017, Bayview filed a proof of claim asserting a secured claim in the amount of $150,548.06 and pre-petition arrearages of $25,971.98.  *Id.* at 3.  It subsequently filed a Notice of Post-petition Mortgage Fees, Expenses and Charges in the amount of $1,450 for various fees it had incurred (though Bayview later designated these fees non-recoverable).  ECF 37-1, at 3. Palazzo objected to the pre-petition arrearages.  ECF 35-7.  On February 25, 2018, the bankruptcy court sustained the objection and determined that the allowed arrearage claim was $11,816.21. ECF 35-9 ("February 25, 2018 Order").

In April 2018, Palazzo filed an amended Chapter 13 plan.  ECF 35-13.  The plan specified that Palazzo would make post-petition payments directly to M&T.  *Id.* at 2.  It also stated that pre-petition arrearages in the amount of $11,816.21 would be paid in monthly installments under the plan. *Id.*  The bankruptcy court confirmed the plan on July 6, 2018.  ECF 35-12 ("Chapter 13 Plan Confirmation Order").

M&T continued to service Palazzo's loan until October 16, 2018, when the loan was "service transferred" to Bayview.  ECF 37-1, at 6.  Palazzo received various communications related to his loan first from M&T, and then from Bayview, including payoff statements, 1098 Forms, and monthly statements.

*Payoff Statements*

The defendants sent two payoff statements to Palazzo: one dated June 21, 2018 (sent by M&T) and one dated February 5, 2019 (sent by Bayview). ECF 37-1, at 49–51 (June 2018 payoff statement), 63–64 (February 2019 payoff statement). Both payoff statements were sent at Palazzo's request. ECF 37-1, at 49 ("This letter responds to your request for a payoff of the above referenced loan."); *id.* at 63 ("Payoff figures have been requested on the loan . . . ."); *id.* at 5 ("On June 21, 2018, upon Plaintiff's request for a payoff statement, M&T's foreclosure counsel . . . provided a payoff statement to Plaintiff."). According to Palazzo, the June 2018 payoff statement sought $1,761.83 in unauthorized interest. ECF 35-1, at 5. The February 2019 payoff statement sought $1,244.22 in unauthorized interest, $3,460.00 in unawarded attorney's fees, $239.79 in unauthorized late charges, $40.00 in NSF charges that had not been incurred, and $1,445.36 in unauthorized corporate advances charges. *Id.* at 5–6.

The three-page June 2018 payoff statement from M&T states that "[i]f you pay this loan in full on the Good Through Date [July 11, 2018], we forecast the payoff amount to be itemized as follows," followed by various fees including a $1,761.83 interest charge that Palazzo contests. ECF 37-1, at 49. It also provides payment instructions and a form to be submitted with payment. *Id.* at 50–51. The bottom of each page of the payoff statement states, in slightly smaller font than the body text, that

> [t]his is an attempt to collect a debt and any information obtained will be used for that purpose.
>
> However, if you are currently in bankruptcy, or if you have been granted a bankruptcy discharge, this is not an attempt to collect a debt from you, nor is it an attempt to impose personal liability on you for the debt.

*Id.* at 49–51.

The two-page February 2019 payoff statement from Bayview lists the "TOTAL AMOUNT TO PAY LOAN IN FULL," comprised of a total unpaid principal balance and various charges that Palazzo contests. *Id.* at 63. It includes information about where to remit payment. *Id.* at 64. On the second page, under a bolded "Disclaimers and Notices" header, it states that

> Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

ECF 37-1, at 64.

*1098 Forms*

Bayview sent Palazzo 2019 and 2020 Mortgage Interest Statement Form 1098s. ECF 35-17 (2019 Form 1098); ECF 35-18 (2020 Form 1098). The 2019 Form 1098 lists attorney fees, legal costs, and property inspection fees totaling $47,507.95. *See* ECF 35-17. The 2020 Form 1098 lists attorney fees, legal costs, and property inspection fees totaling $130,031.01. *See* ECF 35-18.

*Monthly Statements*

M&T and, later, Bayview sent monthly mortgage statements that Palazzo contends included various charges that the bankruptcy court disallowed in the February 25, 2018 Order.[1] Each of these statements lists an outstanding principal amount and an interest rate on the loan. *See, e.g.*, ECF 37-1, at 43. They also include charges such as "Forecl. Attny Fee" in various

---

[1] Statements from M&T are dated May 17, 2018, June 18, 2018, July 17, 2018, August 17, 2018, and September 18, 2018. ECF 37-1, at 43–48, 52–59. A statement from Bayview is dated October 18, 2018. *Id.* at 60–62. Neither party disputes that more, similar monthly statements were also sent; the statements attached to the parties' motions are a representative sampling.

4

amounts. *See id*. In addition, each statement labels the amount of payment received as "Partial." *See id*.

The monthly statements from M&T contain a green box titled "Bankruptcy Message" at the beginning of the statement, before any account information is listed. This message states: "Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you." *See id*. The message includes instructions for Palazzo to write to M&T if he would like to stop receiving statements and directs him to contact his attorney or the trustee with any questions. *Id*. Similarly, the Bayview monthly statement includes a "Bankruptcy Notice" stating

> Our records reflect that you are presently a debtor in an active bankruptcy case . . . . This statement is being sent to you for informational purposes only. It should not be construed as an attempt to collect a debt against you personally. The information disclosed on the periodic statement may not reflect payments you have made to the Trustee and may not be consistent with the Trustee's records. Please contact the Trustee or your attorney if you have any questions regarding this matter. If you want to stop receiving billing statements, write to us.

*Id.* at 60.

On February 16, 2021, Bayview (now known as CLS) sent a statement to Palazzo stating that he had paid $11,816.21 during bankruptcy and listing his current balance as $0. *Id.* at 65. As of October 12, 2021, Palazzo was current on his pre-petition and post-petition obligations. ECF 37-1, at 7.

## II. Standard of Review

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When presented with cross-motions for summary judgment, the Court "must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment

5

as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997) (citation and internal punctuation omitted)).  The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  The Court must "view the evidence in the light most favorable to the nonmoving party" and avoid "weigh[ing] the evidence or mak[ing] credibility determinations." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017) (quoting *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)) (internal quotation marks omitted).  However, the Court also must abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted).

If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).  A factual dispute is genuine only where there is sufficient evidence to permit a reasonable jury to find in the nonmoving party's favor. *Id.*; *see also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019).  "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Humphreys & Partners Architects*, 790 F.3d at 540 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)).  "Instead, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, 'citing to

6

particular parts of the materials of record.'" *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(c)(1)(A)).

### III.   Discussion

#### A.   Violation of automatic stay claim

Filing a Chapter 13 bankruptcy petition triggers an automatic stay of collection activities, including

> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
> (4) any act to create, perfect, or enforce any lien against property of the estate [and]
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a). When Palazzo filed a bankruptcy petition on February 5, 2016, it "operate[d] immediately to stay creditors from pursuing certain enumerated collection actions against the debtor or the debtor's estate." *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 479 (4th Cir. 2015) (citing 11 U.S.C. § 362(a)). If a creditor willfully violates the stay, a debtor may recover actual damages, including costs and attorneys' fees. 11 U.S.C. § 362(k). To recover for this violation, a plaintiff must show "(1) that the defendant violated the stay imposed by § 362(a), (2) that the violation was *willful*, and (3) that the plaintiff was injured by the violation." *Houck*, 791 F.3d at 485 (emphasis in original). For a violation to be willful, the "creditor need not act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *Citizens Bank of Md. v. Strumpf (In re Strumpf)*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 16 (1995). The defendants concede that they knew about Palazzo's Chapter 13 petition and the automatic stay. *See* ECF 37, at 19.

The parties dispute whether the defendants violated the automatic stay and, if so, whether Palazzo was injured. There is no dispute that the defendants never moved to foreclose and never

sent notices of default to Palazzo, actions that undoubtedly would violate the automatic stay. *See* ECF 37-1, at 7 ("While Plaintiff's Bankruptcy case was ongoing, Defendants ceased . . . foreclosure activities, did not attempt to foreclose, and did not send any notices of default to Plaintiff."); ECF 35-10, ¶ 10 (Aff. of Ruben Palazzo) ("[N]o foreclosure action has been filed against me or related to the property by anyone related to the Palazzo Loan . . . .").[2] Instead, Palazzo asserts they violated the stay in two ways: first, by sending numerous inaccurate statements that attempted to collect disallowed sums on the loan; and second, by failing to properly and timely account and apply his payments to the loan.

### 1. Inaccurate Statements

Palazzo argues that the payoff statements, Form 1098 statements, and monthly statements violated the automatic stay because they are inaccurate and they demanded particular charges not owed or disallowed under the February 25, 2018 Order. The defendants contend that each statement was informational only and not an attempt to collect a debt.[3]

Purely informational statements from a creditor to a debtor do not violate Section 362's automatic stay. *In re Pultz*, 400 B.R. 185, 190 (Bankr. D. Md. 2008) (granting summary judgment

---

[2] Palazzo characterizes the "property preservation co[sts]" on 1098 Forms, *see* ECF 35-17, at 2–4, as "foreclosure related costs added to Plaintiff's loan." ECF 37-2, at 13. He claims this cost shows the defendants were "acting as if they would proceed to foreclosure by sending inspection companies to him." ECF 37-2, at 15. The defendants counter with deposition testimony that they conducted visual inspections of the property but that the inspections were "merely conducted to comply with CLS' investor guidelines and not for any other purposes. ECF 37-1, at 7. Palazzo provides no evidence to the contrary and has failed to raise a genuine dispute of material fact that the property preservation costs were undertaken to pursue foreclosure rather than to comply with investor guidelines.

[3] Palazzo also contends that the statements violate other statutory and regulatory provisions, most notably the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*. He argues, without any supporting authority, that provisions of the Bankruptcy Code should be construed as a vehicle to enforce TILA, its implementing regulations, or other similar statutes or regulations. The Court will not accept Palazzo's invitation to apply this novel theory of liability under the Bankruptcy Code.

for defendant because informational loan statement did not violate 11 U.S.C. § 362(a)); *In re Duke*, 79 F.3d 43, 46 (7th Cir. 1996) (holding letter sent to debtor for informational purposes about reaffirming pre-petition debt did not violate 11 U.S.C. § 362(a)). In *In re Pultz*, the court held that a loan statement sent to a Chapter 13 debtor detailing the amount due on the loan did not violate the automatic stay. 400 B.R. at 190. The court differentiated the loan statement at issue from cases in other jurisdictions in which post-conversion loan statements did violate the automatic stay because "those cases involved debtors who had no use for the information in the loan statement" after conversion, whereas this loan statement helped the debtor predict the amount of the deficiency she could pay pursuant to her Chapter 13 plan. *Id.* at 191. Moreover, the court noted that pursuant to Maryland's Local Bankruptcy Rule 4001–5, creditors "may continue to provide customary notice, including, but not limited to, monthly statements . . . . [This action] shall not be considered a violation of the automatic stay." *Id.* (quoting Loc. Bankr. R. 4001–5). The court did not note whether the loan statement at issue had any disclaimer. Nevertheless, because it was purely informational in nature, the court found it was not an attempt to collect. *Id.* at 190.

Here, the three types of statements the defendants sent to Palazzo were informational in nature. The payoff statements were sent at Palazzo's request, rather than as an attempt to collect a debt. *See In re Redmond*, 380 B.R. 179, 186–87 (Bankr. N.D. Ill. 2007) (holding that payoff statements did not violate automatic stay because "[t]he bank did not seek payment by issuing the letters; rather, it issued them in response to [plaintiff's] demand" and they were "simply statements of the bank's position as to what was owed"). The fact that Palazzo requested the statements indicates that he had some use for the information they contained. As for the monthly statements, they fall squarely under the purview of Local Bankruptcy Rule 4001–5, which states that providing customary monthly statements does not violate the automatic stay. And the statements informed

9

Palazzo that he could have opted out of receiving them at any time. Both the payoff statements and the monthly statements included express disclaimers that they were for informational purposes only and not an attempt to collect a debt. *See* ECF 37-1 at 60, 64. As for the 1098 Forms, they are annual statements with tax-related information about the prior years; they are not an attempt to seek future payment. *See In re Knowles*, 442 B.R. 150, 161 (1st Cir. 2011) ("The [tax] statement was merely an informative document sent in the normal course of business that contained data the Debtor needed in order to prepare her tax return."). Each type of statement, then, was informational in nature. As a matter of law, they do not violate Section 362's automatic stay barring debt collection efforts.

Palazzo advances several unconvincing arguments that the monthly and payoff statements were attempts to collect a debt. His first contention is that because these statements listed inaccurate sums or sums disallowed by the February 25, 2018 Order, they were attempts to collect unauthorized amounts.[4] In his view, these allegedly unauthorized fees and sums are particularly egregious because he had already successfully objected to the defendants' proof of claim that had included similar fees. This argument is unpersuasive. Whether the amounts listed in the statements were accurate or not has no bearing on whether the statements were attempts to collect a debt (which they were not). *In re Redmond*, 380 B.R. at 187 (holding that a bank's payoff statements, which allegedly contained amounts that the court's order had disallowed, did not

---

[4] Among the fees to which Palazzo objects is $1,450.00 in unawarded attorney's fees listed in the June 2018 statement . ECF 35-1, at 5–6. Bayview's Vice President testified at deposition that these costs were the Post-petition Mortgage Fees, Expenses and Charges that it filed notice of on May 15, 2017. ECF 37-1, at 3. Palazzo offers no evidence to the contrary. Thus, regardless of any disputes as to whether these particular fees were properly listed, and as Judge Catliotta noted during oral argument on the pending motions, they are post-petition fees that could not have been disallowed by the February 25, 2018 Order regarding pre-petition arrearages. *See* ECF 66-1, at 88.

violate the automatic stay). This is because "[f]or both accurate and excessive claims, collection efforts are prohibited." *Id.* If the payoff statements were attempts to collect a debt, they would violate the automatic stay whether they contained accurate or inaccurate statements of amounts owed.[5] The same logic holds true for the monthly statements. Regarding the 1098 statements, Palazzo concedes that if they are accurate, they are not attempts to collect. *See* ECF 66-1, at 25 ("[O]n the face of a normal 1098, the context of a normal 1098, Your Honor, there is nothing violative of the automatic stay or . . . contemptuous activity."). Any listing of inaccurate charges in the payoff statements did not, by themselves, turn the statements into attempts to collect debts.

Palazzo's second contention is that the statements were not purely informational in nature. He argues that when the statements are viewed in the context of other conduct by the defendants, they are attempts to coerce payments in violation of the stay. He contends that the mere fact that the defendants included stock disclaimers in the statements does not necessarily mean they were not attempts to collect a debt. This argument is similarly unavailing. Palazzo cites a string of opinions from other jurisdictions indicating that a stay violation occurs when the context surrounding the statements indicates that a creditor's conduct is harassing or coercive, either because of the manner in which the statements demand payment, other contemporaneous acts to collect, or both. *See, e.g.*, *In re Zotow*, 432 B.R. 252, 258 (9th Cir. 2010) (noting that prohibited communications include those accompanied by coercion or harassment or that otherwise pressure

---

[5] If an inaccurate statement constituted an attempt to collect the wrong amount, simply sending an accurate payoff statement likewise would constitute an attempt to collect the right amount. *See In re Redmond*, 380 B.R. at 187 (rejecting notion that all payoff letters, even accurate ones, sent in response to debtor's request would violate the automatic stay as "a position completely without support in either precedent or bankruptcy policy"). At oral argument, Palazzo's counsel agreed with the court that accurate statements do not violate the stay. *See* ECF 66-1, at 47. A stay violation occurs when a creditor attempts to collect a debt while a stay is in place, regardless of whether the debt collection effort was for accurate or inaccurate amounts owed.

11

the debtor to pay); *In re Trevino*, 535 B.R. 110, 145 (Bankr. S. D. Tex. 2015) (denying motion to dismiss automatic stay violation claim when defendant's letters "arguably used threats in an attempt to take property away from the estate").[6] In some jurisdictions at least, when a creditor attempts to harass or coerce a debtor, a written disclaimer will not insulate it from liability for violating an automatic stay. *In re Todt*, 567 B.R. 667, 679 (Bankr. D.N.H. 2017) (finding that monthly statements violated discharge injunction because "the use of a pro forma bankruptcy disclaimer is not a 'get out of jail free' card that can absolve a creditor of liability for a pattern of conduct that is inconsistent with the terms of the disclaimer itself").

Each of the cases Palazzo cites in which courts have found that certain statements violated the automatic stay involved communications pressuring debtors to pay or some additional act to collect a debt, as opposed to statements that merely list fees due. In *In re Miller*, for instance, creditors violated the automatic stay by sending four invoices to the debtors' home that explicitly sought fees from them. 447 B.R. 425, 427 (Bankr. E. D. Pa. 2011). In *In re Trevino*, the mortgage servicer sent plaintiffs five letters stating that taxes on their property were "seriously delinquent," it was the "final request," and if they did not pay within 15 days, payment would be advanced on their behalf. 535 B.R. at 145. In *In re Todt*, the creditor did not acknowledge the outcome of the bankruptcy proceedings in its monthly statements, noticed and completed a foreclosure sale, and continued to send statements. 567 B.R. at 678. By contrast, in *In re Zotow*, while the court acknowledged that evidence of coercion *could* overcome a statement's disclaimer, it held as a matter of law that the notice at issue (which included no accompanying payment coupon or

---

[6] Palazzo also cites an unpublished Third Circuit opinion, *Tabb v. Ocwen Loan Servicing, LLC*, that held that the plaintiff alleged sufficient facts demonstrating that the purpose of the statements, read in context, was to induce mortgage payments. 798 F. App'x 726, 730–31 (3d Cir. 2020). *Tabb* concerned FDCPA claims, not alleged violations of 11 U.S.C. § 362. Palazzo's FDCPA claims are not the subject of the cross-motions for summary judgment.

envelope) "was informational in nature and thus not in violation of the stay," including by reasoning that there was "no indication" in the evidence presented that steps were taken to collect outside bankruptcy court. 432 B.R. at 259–60; *see also In re Saylor*, No. 3:07-cv-229-WKW, 2008 WL 2397344 (M.D. Ala. 2008) (refusing to hold that "merely sending a transaction history report and payoff letter in response to a request from the debtor violates the automatic stay when there is no allegation that the [defendant] has attempted to collect the debt").

Here, Palazzo has not identified any aspect of the statements that indicates they are attempts to collect. Though the statements included general instructions on how to remit payment, they were not accompanied by a payment coupon or envelope. They did not include language advising they were "final requests" or threatening that Palazzo must pay by a certain due date to avoid negative consequences. The monthly statements acknowledged the outcome of the bankruptcy proceedings by consistently listing the total amount of pre-petition arrearages due as $11,816.21.

Beyond the statements, Palazzo points to conduct that he claims shows the defendants attempted to collect a debt. He argues that Bayview sent the statements to its attorneys before sharing them with his counsel to "give the appearance that the sums reported on them were lawful and what Bayview intended to seek from him" and that Bayview recently has refused to promptly credit his timely payments. ECF 38, at 13. This conduct led him to "reasonably believe[] they intend to collect from him." *Id*. But the fact that Bayview asked its attorneys to review the statements before they were sent, or that Bayview more recently failed to promptly credit his timely payments, is not evidence of coercion or attempts to collect. While Palazzo may believe this conduct shows the defendants intended to coerce payment, he has not substantiated this belief or shown that the conduct was an attempt to collect a debt in violation of the automatic stay.

13

The statements, on their face, were not attempts to collect a debt. And the undisputed facts do not support a finding that the defendants coerced or harassed Palazzo in attempting to collect a debt. Palazzo deserves credit for making timely payments after he successfully objected to the proof of claim, but the defendants' later statements and actions do not signal they were coercing, harassing, or attempting to collect the debt.

### 2. Misapplied payments

Palazzo also asserts that the defendants misapplied payments that he made either directly or via the Chapter 13 trustee, crediting the wrong payments to post-petition costs or to fees that were disallowed by the February 25, 2018 Order. For instance, Palazzo asserts that the 1098 Forms indicate that the defendants labeled his post-petition payments as "irregular payments" and then (as indicated by their listed due dates) improperly applied them to pre-petition arrearages. *See* ECF 35-17, at 2–4; ECF 56, ¶ 62(b).

A misapplication of payments can violate an automatic stay. *See In re Newcomer*, 438 B.R. 527, 540–41 (Bankr. D. Md. 2010) (finding that loan servicer violated automatic stay by applying post-petition loan payments to pre-petition escrow deficiency); *In re Blanco*, 633 B.R. 714, 759 (S. D. Tex. 2021) (denying motion to dismiss automatic stay violation claim when debtor alleged that Bayview applied payments to wrongful fees). To violate the stay, though, the misapplication of payments must result in or be accompanied by an "act to collect, assess, or recover" sums not owed. *See In re Bivens*, 625 B.R. 843, 849 (Bankr. M.D.N.C. 2021) (denying motion to dismiss automatic stay violation claim when debtor alleged that lender's misapplied payments resulted in collection of erroneously inflated balance and improper default declaration); *In re Williams*, 612 B.R. 682, 696 (Bankr. M.D.N.C. 2020) (denying motion to dismiss automatic stay violation claim when debtor alleged that servicers' misapplied payments resulted in

erroneously inflated balance that was then transferred to another creditor for collection). In *In re Newcomer*, for instance, the loan servicer included an escrow deficiency in its calculation of the debtor's post-petition loan obligation, despite having already classified that deficiency as pre-petition in its proof of claim and collected pre-petition payments towards it. 438 B.R. at 540–41. In other words, the loan servicer collected the same payments twice. The effort to collect the escrow deficiency a second time through post-petition loan payments was an "act to collect . . .a claim against the debtor that arose before the commencement of the case" in violation of § 362(a)(6). *Id.* at 541. In *In re Blanco*, Bayview applied plan payments to unapproved fees while also collecting monthly mortgage payments that included a pre-petition escrow shortage already covered in the proof of claim and changing monthly mortgage payments without notice. 633 B.R. at 759. The court found these allegations survived a motion to dismiss the automatic stay violation claim.

The facts here are distinguishable from the circumstances in *In re Newcomer* and from Bayview's conduct in *In re Blanco*. The defendants consistently listed total balance for pre-petition arrearages as $11,816.21. The parties agree that Palazzo paid no more than $11,816.21 on his pre-petition arrearages and that he is current on his post-petition obligations. *See* ECF 37-1, at 7, 65. Palazzo has not provided any evidence that he paid erroneously inflated post-petition amounts. Even if it is true that the defendants misapplied payments they received from Palazzo, there is no evidence that because of this misapplication, they sought to collect (or to double-collect) incorrect sums.[7] Palazzo fails to raise a genuine dispute of material fact that any misapplication of payments violated 11 U.S.C. § 362(a).

---

[7] The Court offers no opinion as to whether the defendants' conduct violates other statutory or legal obligations that are not at issue in the pending cross-motions for summary judgment.

Because there is no genuine dispute of material fact that the defendants did not violate the automatic stay, the Court need not address whether Palazzo was injured.  *See In re Knowles*, 442 B.R. 150 (1st Cir. 2011) (affirming bankruptcy court's holding that statements sent for informational purposes were not acts to collect on the debt without discussing injury).  Palazzo's motion for summary judgment on Count II is denied.  The defendants' motion for summary judgment on Count II is granted.

### B.  Contempt claim

In the alternative, Palazzo seeks a judgment holding the defendants in contempt for violating the February 25, 2018 Order, Palazzo's Chapter 13 Plan Confirmation Order, and the automatic stay.  Section 105 of the Bankruptcy Code authorizes a court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," including orders of civil contempt.  11 U.S.C. § 105(a); *In re Walters*, 868 F.2d 665, 669 (4th Cir. 1989) (holding that bankruptcy court's civil contempt order was appropriate to carry out the provisions of the bankruptcy code under 11 U.S.C. § 105(a)).  For a court to hold a party in civil contempt, the movant must show by clear and convincing evidence

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;
> (2) . . . that the decree was in the movant's "favor";
> (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and
> (4) . . . that [the] movant suffered harm as a result.

*In re Grand Jury Subpoena*, 597 F.3d 189, 202 (4th Cir. 2010) (quoting *Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000)) (alterations in original; internal citations omitted).  Civil contempt is a "severe remedy" that "should not be resorted to where there is [a] *fair ground of doubt* as to the wrongfulness of the defendant's conduct."  *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801–02 (2019) (citation omitted) (emphasis in *Taggart*).  The fair ground of doubt standard is an

objective one; a party's subjective belief that it is complying with a court order "ordinarily will not insulate [it] from civil contempt if that belief was objectively unreasonable." *Id.* at 1802. The Supreme Court clarified in *Taggart* that a court may hold a creditor in civil contempt for violating a bankruptcy court's order, including those in Chapter 13 cases, when there is "no objectively reasonable basis for concluding that the creditor's conduct might be lawful" under the court's order. *Id.* at 1801–02 (holding fair ground of doubt standard applies to Chapter 7 discharge order because "traditional civil contempt principles apply straightforwardly to the bankruptcy discharge context"); *Beckhart v. NewRez, LLC*, 31 F.4th 274, 277 (4th Cir. 2022) (holding *Taggart* fair ground of doubt standard "applies broadly and cannot be confined to Chapter 7 bankruptcy"); *see also In re Gravel*, 6 F.4th 503, 512–13 (4th Cir. 2021) (applying *Taggart* fair ground of doubt standard to alleged violation of Chapter 13 plan and holding there was a fair ground of doubt as to whether the court order barred creditor's conduct).

The defendants do not dispute that the February 25, 2018 Order, Palazzo's Chapter 13 Plan Confirmation Order, and the automatic stay were valid, that the defendants had actual knowledge of them, and that they were in Palazzo's favor. *See* ECF 37, at 16. Instead, they argue that Palazzo has not established that their conduct violated the court orders or that he suffered harm.

### 1. February 25, 2018 Order

Palazzo's main ground for seeking contempt is that the various fees and sums listed in the payoff and monthly statements were disallowed by the February 25, 2018 Order sustaining Palazzo's objection to the proof of claim. That Order set the arrearages at $11,816.21—a sum which, as Judge Catliotta indicated at the hearing on Palazzo's objection, excluded various late fees and attorney's fees that the defendants had attempted to collect under their proof of claim. ECF 35-9, at 2; *see* ECF 35-8, at 52–60. By listing items like attorney's fees and other apparent

17

penalties on the payoff and monthly statements, Palazzo insists, the defendants have violated that Order and should be held in contempt. The defendants respond that regardless of the fees listed as transactions on the statements, each statement also accurately lists the pre-petition arrearages' "Current Balance" as $11,816.21. *See, e.g.*, ECF 37-1, at 41 (May 17, 2018 monthly statement). The February 25, 2018 Order did not specify how pre-petition sums were to be reduced, so while defendants left various fees listed, they still reduced the total sum due in accordance with the order. *See* ECF 37-1, at 5. A February 2021 statement indicates that all payments, totaling $11,816.21, were applied to Palazzo's pre-petition arrearages, leaving a balance of zero and curing the pre-petition default on the loan. *Id*. at 65.

The Court need not wade into whether it was proper for the defendants to reduce the arrearages in a certain manner or to leave some fees listed while removing others. The defendants consistently identified the pre-petition arrearages as $11,816.21, the precise amount specified in the Plan, and then reported the remaining balance as zero after that amount was paid. These undisputed facts are sufficient to raise at least a fair ground of doubt as to whether the defendants' listing of attorney's fees and other penalties on the payoff and monthly statements was unlawful and contrary to the February 25, 2018 Order.

## 2. Chapter 13 Plan Confirmation Order

Under 11 U.S.C. § 1327(a), "the provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Two aspects of Palazzo's Plan concerned the defendants: (1) that Palazzo would pay pre-petition arrearages in the amount of $11,816.21 through 26 monthly payments of $454.47; and (2) that he would make post-petition payments directly to the defendants. ECF 35-13, at 2–3.

18

As discussed, Palazzo contends that the defendants did not properly apply payments approved by the Plan. First, he argues that, according to the monthly statements, they used the trustee's payments to cover various fees that were not allowed by the February 25, 2018 Order. Even if the payments were used to cover disallowed fees, that the defendants collected only the sum permitted by the Plan raises a fair ground of doubt as to whether the manner in which they used the fees violated the Plan, just as it did with the February 25, 2018 Order. Second, Palazzo contends that some of the statements did not accurately reflect the amounts that either he or the trustee paid. *See* ECF 52. For payments from the trustee, the defendants counter that the inaccurate statements were caused by a delay in processing payments from the trustee. ECF 37-1, at 7. Regarding payments received directly from Palazzo, the defendants point out that there is no dispute that he is current on his loan and that he never paid or was asked to pay more than his regular post-petition payments. Given that the explanation for the inaccurate statements is reasonable, that the defendants consistently identified his pre-petition balance as $11,816.21, and that they correctly calculated that he had a zero balance by February 2021, the Court finds, as a matter of law, there is a fair ground of doubt as to whether the defendants' handling of post-petition payments violated the Chapter 13 Plan.

### 3. Automatic stay under 11 U.S.C. § 362(a)

Though not technically orders, "automatic stay provisions are treated as specific and definite orders of the Court" and "a wilful [sic] violation of the automatic stay is contemptuous." *In re Miller*, 22 B.R. 479, 481 (Bankr. D. Md. 1982) (citations omitted). For reasons discussed earlier, the defendants did not violate the automatic stay under 11 U.S.C. § 362(a). It follows that, under *Taggart*'s high bar to establish contempt, Palazzo has not shown that there is "no fair ground of doubt" that the defendants violated the stay.

The Court finds, as a matter of law, that there is a fair ground of doubt as to whether the defendants violated either of the Orders or the automatic stay.  Because Palazzo cannot establish this element of civil contempt, the Court need not address whether he suffered harm because of a violation of a court order.  Palazzo's motion for summary judgment on Count I is denied.  The defendants' motion for summary judgment on Count I is granted.

## IV. Conclusion

Palazzo's cross-motion for summary judgment on Counts I and II, ECF 35, is denied.  The defendants' cross-motion for summary judgment on Counts I and II, ECF 36, is granted.  A separate order follows.

3/31/2023
Date

Deborah L. Boardman
United States District Judge