**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

RUBEN PALAZZO,                              *

    **Plaintiff**                              *

v.                                          *          **Civ. No. DLB-20-2392**

BAYVIEW LOAN SERVICING LLC, *et al.*, *

    **Defendants.**                           *

**MEMORANDUM OPINION**

In 2016, Ruben Palazzo filed for Chapter 13 bankruptcy to avoid a threatened foreclosure on his home. In 2019, Palazzo initiated an adversary proceeding in bankruptcy court against two servicers of his home mortgage loan: Bayview Loan Servicing LLC n/k/a Community Loan Servicing LLC ("Bayview") and Manufacturers and Traders Trust Company d/b/a M&T Bank ("M&T") (collectively, "the defendants"). Palazzo claimed that during the bankruptcy proceedings, the defendants repeatedly sought sums from him that he did not owe and violated the automatic stay of debt collection activities by sending him correspondence demanding payment. Eventually, the adversary proceeding was withdrawn, and Palazzo filed a second amended complaint against Bayview and M&T in this Court. In his second amended complaint, Palazzo alleged the defendants violated his Chapter 13 bankruptcy plan and other court orders (Count I); the automatic stay triggered by his Chapter 13 bankruptcy petition under 11 U.S.C. § 362 (Count II); the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-201 *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Com. Law § 13-101 *et seq.* (Count III); and that Bayview violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Count IV).

The Court previously granted summary judgment to the defendants on Counts I and II. Pending before the Court now are the defendants' motion for summary judgment on the FDCPA, MCDCA, and MCPA claims and Palazzo's motion for partial summary judgment on some of his FDCPA, MCDCA, and MCPA claims and the defendants' affirmative defenses. Both motions have been fully briefed, and the parties filed exhibits in support. ECF 85; ECF 85-1; ECF 85-2; ECF 85-3; ECF 85-4; ECF 85-5; ECF 86; ECF 86-1; ECF 87; ECF 87-1; ECF 87-2; ECF 87-3; ECF 87-4; ECF 87-5; ECF 87-6; ECF 88; ECF 88-1; ECF 88-2; ECF 91. No hearing is necessary. *See* Loc. R. 105.6.

For the reasons below, the Court denies Palazzo's motion for partial summary judgment and grants the defendants' motion for summary judgment on the FDCPA claims. As for the MCDCA and the MCPA claims, the Court denies the motions for summary judgment without prejudice. The only basis for the Court's jurisdiction over the remaining state law claims is supplemental jurisdiction under 28 U.S.C. § 1367(a) or diversity jurisdiction under 28 U.S.C. § 1332. The Court declines to exercise supplemental jurisdiction over the state law claims, and the Court does not have enough information to find it has diversity jurisdiction over these claims.

## I.     Background

### A.   Facts

The following facts relevant to the FDCPA claims against Bayview are not in dispute unless otherwise noted. In 2007, Palazzo obtained a $128,000 mortgage loan from SunTrust Mortgage to purchase the home he shares with his wife. ECF 85-2, at 5–9; ECF 85-1, at 1. In 2008, Palazzo and SunTrust agreed to modify the loan. ECF 87-1, at 2 ¶ 6. As a result of the modification, the principal balance was $137,090.07 and the interest rate was four percent. *Id*. After falling delinquent on his payments, Palazzo entered a repayment agreement with SunTrust on December

27, 2010. ECF 87-1, at 2 ¶ 7; ECF 35-8, at 54. On December 16, 2013, Palazzo received notice

that the servicing of his home mortgage loan had been transferred to M&T. ECF 85-2, at 10. Then,

on October 26, 2018, Bayview informed Palazzo that the servicing of his loan had been transferred

to Bayview on October 16, 2018. *Id.* at 15.

In the early 2010s, Palazzo fell into arrears on his mortgage, and he received notice of

intent to foreclose on his home. ECF 85-3, at 85 (Chapter 13 plan describing arrears payable to

M&T); ECF 85-2, at 14 (notice of intent to foreclose); *see also id.* at 69 (Hr'g Tr. at 7:25–8:3)

(description of other attempts to foreclose). In 2016, Palazzo filed for Chapter 13 bankruptcy. ECF

85-3, at 69 (Hr'g Tr. at 8:3–8:4)*.* During bankruptcy proceedings, Bayview filed a proof of claim

for $150,548.06, including pre-petition arrearages of $25,971.98. *Id.* at 25–64. The proof of claim

listed M&T as the entity to which notices and payments should be sent. *Id.* at 25.

 Palazzo objected to the proof of claim on September 11, 2017. *Id.* at 65–66. On January

25, 2018, the bankruptcy court held a hearing on the proof of claim. *Id.* at 68 (Hr'g Tr. 1:3–1:16).

That day, the bankruptcy court issued an order that disallowed Bayview's proof of claim as filed

and allowed an arrearage claim of $11,816.21. *Id.* at 83–84.

On April 23, 2018, Palazzo filed an amended Chapter 13 plan reflecting the pre-petition

arrearage amount of $11,816.21. *Id.* at 85–87. Palazzo's Chapter 13 plan listed M&T as the

"claimant" for the pre-petition arrearage. *Id.* at 85. The bankruptcy court entered its approval of

Palazzo's amended Chapter 13 plan on July 6, 2018. *Id.* at 88–89. Under the approved plan,

Palazzo sent payment on the pre-petition arrearage amounts to the Chapter 13 trustee, and he sent

his post-petition monthly mortgage payments to M&T, and then to Bayview. ECF 85-3, at 86.

Palazzo's Chapter 13 bankruptcy petition triggered an "automatic stay" of collection

activities, including actions to possess or enforce a lien against the property or "collect, assess, or

recover a claim against the debtor that arose before the commencement of the case" under the Bankruptcy Code. 11 U.S.C. § 362(a). After the automatic stay was imposed, the defendants sent Palazzo monthly mortgage statements, payoff statements, and in Bayview's case, 1098 tax forms ("1098 Forms").

*Monthly Statements*

Bayview issued Palazzo monthly mortgage statements. *See, e.g.*, ECF 87-1, at 21–22. The statements list various amounts, including, for example, the loan's outstanding principal, the interest rate and amount, escrow balances and payments, unpaid post-petition payments, unapplied funds and payments, transaction activity, and various fees and charges. *See, e.g.*, *id.* Palazzo contests some of the amounts listed in Bayview's monthly statements, including sums identified in transaction activity as litigation fees, attorney costs, and foreclosure attorney fees. *See* ECF 85-1, at 11 ¶ c; ECF 85-4, at 88, 173.

Bayview's monthly statements also list past payments. Some past payments are identified as unapplied partial payments. *See, e.g.*, ECF 85-4, at 32. Statements include a box titled "Summary of Amounts Past Due Before Bankruptcy Filing," referencing the pre-petition arrearage amount of $11,816.21. *Id.* The amounts listed in this box are identified as the total amount paid, the amount paid since the last statement or paid last month, and the current balance. *See, e.g.*, *id.*; *see also* 87-1, at 21. Each box reflecting pre-petition arrearage amounts has the following language: "This box shows amounts that were past due when you filed for bankruptcy. It may also include other allowed amounts on your mortgage loan. The Trustee is sending us the payments shown here. These are separate from your regular monthly mortgage payment." *See, e.g.*, ECF 85-4, at 32. Bayview's monthly statements did not always reflect the payments Palazzo had made to

Bayview and the trustee as of the statement date, and sometimes listed post-petition payments as "partial payments." ECF 85-2, at 146 ¶¶ 24.i, 24.iii (Decl. C. Palazzo).

Bayview's monthly mortgage statements list prospective post-petition payment dates (i.e., dates occurring after the statement date). *See, e.g.*, ECF 85-4, at 17. Bayview's monthly statements also list a sum for the "Next Post Petition Payment Amount." *See, e.g.*, ECF 87-1, at 21. Some of Bayview's monthly statements list a date that the next post-petition payment amount is "Due By," *see, e.g.*, ECF 85-4, at 113, and all of Bayview's monthly statements include payment coupons and instructions for paying by check and other payment methods, *see, e.g.*, ECF 87-1, at 21–22. The second page of the monthly statements includes general information for mortgagors, including how to make payments, alerts about potential mortgage scams, and a notice that the servicer can report information, including late or missed payments or other defaults, to credit bureaus. *See, e.g.*, ECF 87-1, at 22.

In each monthly statement, on the top half of the first page, Bayview included a "Bankruptcy Message." just below the recipient's address:

> **Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you.** If your bankruptcy plan requires you to send your regular monthly mortgage payments to the Trustee, you should pay the Trustee instead of us. Please contact your attorney or the Trustee if you have questions. If you want to stop receiving statements, write to us at Community Loan Servicing, [address].

ECF 87-1, at 21.[1]

---

[1] One of the Bayview monthly statements in the record uses slightly different language. The relevant message, still at in the top half of the page just under the recipient's address, is titled "Bankruptcy Notice" and reads as follows:

> Our records reflect that you are presently a debtor in an active bankruptcy case or you previously received a discharge in bankruptcy. This statement is being sent to you for informational purposes only. It should not be construed as an attempt to

*Payoff Statement*

Bayview also sent Palazzo a payoff statement in response to his request. ECF 87-1, at 19–20.

Bayview's two-page payoff statement, dated February 5, 2019, lists the "total amount to pay loan in full." *Id.* at 19. Under a statement that "[t]his loan is due for the July 01, 2017 payment," the payoff statement includes the principal balance, interest, and several charges and fees. *Id.* Palazzo contests some of the amounts listed in Bayview's payoff statement, including the amount of interest, unpaid late charges, unpaid non-sufficient fund charges, the "Recoverable Corporate Advance Balance," and "Legal Fees and Costs." ECF 85-1, at 10 ¶ Y.b. The first page of Bayview's payoff statement also informs the recipient that "[t]hese figures are good to March 05, 2019," that "[y]our 1st unpaid principal balance will accrue interest at $13.44 per day from March 05, 2019 to the date sufficient funds are received in this office," that "[i]ssuance of this statement does not suspend the contract requirements to make the mortgage payment when due," and that "[l]ate charges and other penalties may be assessed according to the loan documents." ECF 87-1, at 19.

The second page of Bayview's payoff statement provides payment instructions. *Id*. at 20. On the second page, the recipient is advised that "[i]f the loan is in Foreclosure or Bankruptcy, you must obtain an amended payoff statement for updated fees prior to escrow closing." *Id.* Also on the second page is the following statement:

> Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your

---

collect a debt against you personally. The information disclosed on the periodic statement may not reflect payments you have made to the Trustee and may not be consistent with the Trustee's records. Please contact the Trustee or your attorney if you have any questions regarding this matter. If you want to stop receiving billing statements, write to us.

ECF 87-1, at 17.

> obligation has been discharged or is subject to an automatic stay of bankruptcy this notice
> is for compliance and informational purposes only and does not constitute a demand for
> payment or any attempt to collect such obligation.

*Id.*

### *1098 Forms*

Bayview also sent Palazzo 1098 Forms—federal "Mortgage Interest Statement" tax forms—for the 2019 and 2020 tax years. ECF 85-2, at 22–29. The 1098 Forms include the amount of interest received, the outstanding principal balance, and property taxes, as well as a list of transactions associated with the loan. *Id.* Palazzo claims some of the amounts listed in the transaction histories were unauthorized or unpermitted for collection, including attorney fees, legal costs, and property inspection fees. ECF 85, at 14 ¶ 4; ECF 85-1, at 11–13 ¶¶ d, e. The transaction history on the 1098 Forms lists a "transaction date" and a "due date" for certain amounts; all of these dates precede the date of the form. ECF 85-2, at 22–29. None of the attorney fees, legal costs, or property inspection fees had a due date listed in the transaction history. *Id.* In the top portion of 1098 Forms, above the transaction histories, the form states:

> The information in boxes 1 through 9 and 11 is important tax information and is
> being furnished to the IRS. If you are required to file a return, a negligence penalty
> or other sanction may be imposed on you if the IRS determines that an
> underpayment of tax results because you overstated a deduction for this mortgage
> interest or for these points, reported in boxes 1 and 6; or because you didn't report
> the refund of interest (box 4); or because you claimed a nondeductible item.

The form also identifies its source as the Internal Revenue Service. *Id.* at 22, 25.

At some point, Palazzo stopped receiving monthly statements and 1098 Forms from Bayview. ECF 85-2, at 147–48 ¶ 27 (Decl. C. Palazzo). Palazzo was able to access Bayview's "monthly statements and other documents for the Loan" online for a period of time, *id.* at 145 ¶ 23, but he eventually lost access to his online portal, *id.* at 147–48 ¶ 27.

By January 21, 2021, Palazzo made all payments under his Chapter 13 plan. ECF 88-1, at 16. A Bayview monthly statement dated February 16, 2021 indicated that Palazzo paid the $11,816.21 during bankruptcy and listed a balance due of $0.00. ECF 85-4, at 180. The bankruptcy case closed on July 10, 2022. ECF 87, at 9.

Meanwhile, on June 1, 2022, servicing of Palazzo's mortgage loan transferred from Bayview to Nationstar Mortgage d/b/a RightPath ("RightPath"). ECF 85-4, at 254. Bayview did not give RightPath Palazzo's correct address. *Id.* Instead, Bayview gave RightPath the address of Bayview's outside counsel, Houser LLP. *Id.*; *see also* ECF 87, at 7 n.5. Because his account listed an address that did not belong to him, Palazzo did not receive notice of the transfer from Bayview to RightPath for several months. ECF 85-4, at 254. In a February 24, 2023 letter to Palazzo, RightPath documented that Palazzo had reached out to get information about his mortgage loan and RightPath informed him that Bayview had given RightPath an incorrect address for his account. ECF 85-4, at 254–55. The letter also alerted Palazzo that, during the period when he was not receiving statements, his monthly payments increased from $850.08 to $856.83. *Id.* at 255. RightPath credited the unpaid amounts to his account as a courtesy. *Id.*

### B.  Procedural History

On June 21, 2019, Palazzo initiated an adversary proceeding against the defendants in bankruptcy court. ECF 85, at 4. In his original complaint, Palazzo asserted the defendants attempted to collect sums not owed, sought a declaratory judgment on the amount he owed Bayview, asked for a finding of contempt against Bayview, and alleged Bayview and M&T violated the MCDCA, MCPA, and the Maryland Mortgage Fraud Protection Act. *In re Palazzo*, No. 19-00203 TJC, 2022 WL 620632, at *2 (Bankr. D. Md. Mar. 1, 2022). On July 28, 2020, Palazzo moved to file an amended and supplemental complaint. *Id.* The bankruptcy court granted

8

his motion on August 12, 2020. *Id.* In his amended complaint, Palazzo alleged the defendants, by seeking to collect sums not due, violated his Chapter 13 plan and other court orders (Count I), the automatic stay triggered by his Chapter 13 bankruptcy petition (Count II), the MCDCA and the MCPA (Count III), and as to only Bayview, the FDCPA (Count IV). ECF 29, at 43–47. On August 17, 2020, Palazzo moved to withdraw the adversary proceeding and pursue his claims in this Court. ECF 1. The bankruptcy court then determined that it lacked jurisdiction over the MCDCA, MCPA, and FDCPA claims, ECF 87, at 11, and on February 4, 2022, the court granted Palazzo's motion to withdraw, ECF 12. Palazzo filed a second amended complaint in this Court on April 25, 2022, asserting the same claims against the defendants that were in his amended complaint. ECF 56, at 71.

This Court previously granted summary judgment for the defendants on Counts I and II of Palazzo's second amended complaint. *Palazzo v. Bayview Loan Servicing LLC*, No. DLB-20-2392, 2023 WL 2743357, at *10 (D. Md. Mar. 31, 2023). The parties engaged in discovery on the MCDCA and MCPA claims against M&T and Bayview in Count III and the FDCPA claims against Bayview in Count IV.

After the close of discovery, Palazzo moved for partial summary judgment on some of his claims under the FDCPA, MCDCA, and MCPA and the defendant's affirmative defenses. The defendants filed a cross-motion for summary judgment on all of Palazzo's FDCPA, MCDCA, and MCPA claims.

## II.     Standard of Review

Summary judgment is appropriate when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

stipulations . . . , admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). The Court must "view the evidence in the light most favorable to the nonmoving party" and avoid "weigh[ing] the evidence or mak[ing] credibility determinations." *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017) (quoting *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015)) (internal quotation marks omitted). However, the Court also must abide by its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)) (internal quotation marks omitted). "When cross-motions for summary judgment are before a court, the court examines each motion separately." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011).

If the moving party demonstrates "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmoving party to "present specific facts showing that there is a genuine issue for trial." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). A factual dispute is genuine only where there is sufficient evidence to permit a reasonable jury to find in the nonmoving party's favor. *Id.*; *see also Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019). "To create a genuine issue for trial, 'the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence.'" *Humphreys & Partners Architects*, 790 F.3d at 540 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)).

### III.    Discussion

#### A.  Fair Debt Collection Practices Act

The FDCPA aims to redress "the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692. The law's stated purpose is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Id.* The statute provides a private right of action to sue debt collectors who violate the law for actual and statutory damages, as well as attorney's fees. *Id.* § 1692k(a). A civil action for an FDCPA violation must be brought within one year of the alleged violation. *Id.* § 1692k(d). "The FDCPA limitations period begins to run on the date the alleged FDCPA violation actually happened." *Rotkiske v. Klemm*, 589 U.S. 8, 13 (2019).

An FDCPA plaintiff "must prove that: '(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012) (quoting *Ruggia v. Wash. Mut.*, 719 F. Supp. 2d 642, 647 (E.D. Va. 2010)); *see also, e.g.*, *Best v. Fed. Nat'l Mortg. Ass'n*, 450 F. Supp. 3d 606, 623 (D. Md. 2020).

There is no dispute that Palazzo's mortgage loan for the residence he shares with his wife is a consumer debt. *See* 15 U.S.C. § 1692a(5). There also is no dispute that Bayview is a debt collector under the FDCPA. *See Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016). Whether Bayview committed an act or omission prohibited by the FDCPA requires a closer look at the statute and Bayview's conduct.

### 1. Section 1692f

Palazzo and Bayview have cross-moved for summary judgment on Palazzo's claim under § 1692f of the FDCPA.

Section 1692f of the FDCPA proscribes certain "unfair or unconscionable" practices by debt collectors. 15 U.S.C. § 1692f. The statute lists eight examples of prohibited conduct. The enumerated practices range from collecting unauthorized amounts to sending a consumer a postcard regarding their debt. *Id.* As the Fourth Circuit has explained, "[w]hat all of these enumerated activities have in common is the capacity to harass the debtor or to pressure her to pay the debt." *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 236 (4th Cir. 2015). The enumerated practices are not an exhaustive list of unfair or unconscionable practices. Section 1692f has been described as a "backstop" enacted by Congress "that would enable 'courts, where appropriate, to proscribe other improper conduct … not specifically addressed' by the statute." *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 240 n.4 (2017) (Sotomayor, J., dissenting) (quoting S. Rep. No. 95–382, at 4 (1977)). No matter how broadly the term "unfair or unconscionable" practices is read, "the threshold requirement for application of the [FDCPA] is that prohibited practices are used in an attempt to collect a debt." *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 725 (D. Md. 2011) (quoting *Mabe v. G.C. Servs. Ltd. P'ship*, 32 F.3d 86, 87–88 (4th Cir. 1994)) (alteration in original). Section 1692f specifically bars debt collectors from employing such "unfair or unconscionable" practices as a "means to *collect or attempt to collect any debt*." § 1692f (emphasis added).

Bayview argues that it did not violate § 1692f because none of its conduct was debt collection or attempted debt collection. *See* ECF 87, at 17. Palazzo argues that Bayview violated § 1692f on several occasions and in multiple ways: by sending him monthly statements, a payoff

statement, and 1098 Forms that attempted to collect sums he did not owe; by not amending the amount he owed in its mortgage servicing system to reflect the bankruptcy's orders; by holding payments in suspense; by failing to send statements to him during the course of this litigation; by failing to credit a payments he made; by not sending him notices concerning his loan; by failing to disclose the transfer of mortgage servicing to another servicer; by providing incorrect address and accounting information to the new mortgage servicer; and by forwarding payments to the new servicer in an untimely manner. ECF 85, at 13–16 ¶¶ 1–12. The Court addresses each alleged § 1692f violation in turn.

### a.  Bayview's Communications

Palazzo argues Bayview attempted to collect a debt from him when Bayview sent him monthly statements, a payoff statement, and 1098 Forms.

The FDCPA does not define debt collection or attempted debt collection. *See* 15 U.S.C. § 1692 *et seq.* Courts have held that not every communication from a debt collector to a debtor is a debt collection or an attempt to collect a debt under the FDCPA. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011); *see also Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 384–85 (7th Cir. 2010). The Fourth Circuit has adopted a "commonsense inquiry" test to determine if a communication is an attempt to collect debt for purposes of the FDCPA. *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016) (quoting *Gburek*, 614 F.3d at 385). Under this commonsense inquiry, courts "evaluate[] the 'nature of the parties' relationship,' the '[objective] purpose and context of the communication[ ],' and whether the communication includes a demand for payment." *Id*. (quoting *Gburek*, 614 F.3d at 385) (alteration in original). A communication may be an attempt to collect debt even if it does not include an "explicit demand for payment." *Id*. (quoting *Gburek*, 614 F.3d at 382).

For all Bayview communications to Palazzo, the nature of the parties' relationship was debtor and debt collector. Evaluation of the other components of the commonsense inquiry—the objective purpose and context of the communications and whether the communications include demand for payment—requires examination of the specific communications.

*Monthly Statements*

Palazzo argues that Bayview violated § 1692f by sending monthly mortgage statements that did not report amounts Palazzo had paid and sought to collect amounts he did not owe. On Palazzo's account, these monthly statements routinely did not report the amount he paid to the Trustee on the proof of claim, *see* ECF 85, at 14 ¶ 5, and did not always account for all of the post-petition amounts he paid, *see id.* at 14 ¶ 6. Palazzo identifies two monthly mortgage statements, from September 16, 2019, and January 7, 2021, that he says sought to collects amounts he did not owe: $3,201.00 in litigation fees and attorney costs and $150 in foreclosure attorney fees, respectively. *See* ECF 85-1, at 11 ¶ Y.c. Bayview argues these monthly mortgage statements were purely informational and not attempts to collect a debt. *See, e.g.*, ECF 87, at 19. To resolve this debate, the Court answers the remaining questions in the commonsense inquiry: what was the objective purpose and context of the monthly statements, and did they include a demand for payment.

The Fourth Circuit in *Lovegrove v. Ocwen Home Loans Servicing, L.L.C.*, 666 F. App'x 308 (4th Cir. 2016), answered these questions on similar facts. In *Lovegrove*, the plaintiff, Thomas Lovegrove, defaulted on his obligations to a bank under a promissory note secured by a deed of trust on his home. *Id*. at 309. He filed for Chapter 7 bankruptcy and obtained a discharge of his obligations to the bank under the promissory note. *Id.* at 310. A little over a year after the discharge, the defendant, Ocwen Home Loans Servicing LLC, became the servicer of Lovegrove's mortgage.

*Id.* Within days of becoming his loan servicer, Ocwen sent Lovegrove several letters. *Id.* The first was a letter accounting Lovegrove's discharged but unpaid debt. *Id.* The second was a letter detailing information about "Alternatives to Foreclosure." *Id.* Both letters included the following disclaimer:

> This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is not intended as and does not constitute an attempt to collect a debt.

*Id.*

The loan servicer then began sending Lovegrove monthly account statements. *Id.* The statements included the principal balance, the next payment due date, the total amount due, and a payment coupon. *Id.* The monthly statements also included the following language in a section titled "Important Messages": "If you are currently in bankruptcy or if you have filed for bankruptcy since obtaining this loan, please read the bankruptcy information provided on the back of this statement. Our records indicate that your loan is in foreclosure. Accordingly, this statement may be for informational purposes only . . . ." *Id.* On the back of the statements, a section called "Important Bankruptcy Information" stated:

> If you or your account are subject to pending bankruptcy or the obligation referenced in this statement has been discharged in bankruptcy, this statement is for informational purposes only and is not an attempt to collect a debt. If you have any questions regarding this statement, or do not want Ocwen to send you monthly statements in the future, please contact us . . . .

*Id.*

The *Lovegrove* Court analyzed these communications under the commonsense inquiry from *In re Dubois* and found they were not an attempt to collect a debt. *Id.* at 311. The letters and monthly statements "were for informational purposes only, were non-threatening in nature, and contained clear and unequivocal disclaimers to establish that they were not in connection with the

collection of a debt under Lovegrove's circumstances." *Id.* In reaching this conclusion, the court cited the letters' disclaimer that "th[e] communication is not intended as and does not constitute an attempt to collect a debt" if the debt had been "discharged through bankruptcy," and the similar disclaimer in the monthly statements. *Id.* at 312. The court found that the communications "were not sent for the 'animating purpose' of obtaining payment" and that "most do not contain a demand for payment." *Id.* at 312 n.5 (quoting *In re Dubois*, 834 F.3d at 427). The court acknowledged the monthly statements "could possibly be viewed as a demand for payment" because they "generally request payment." *Id.* Even so, the court found the disclaimer in the monthly statements was "sufficient to provide notice that, for customers in bankruptcy, Ocwen was providing an updated account summary and not demanding payment." *Id.* The Fourth Circuit cited with approval the district court's contrast of these non-threatening communications with hypothetical communications "where a creditor harassed the debtor or tried to pressure the debtor into making payments through multiple phone calls or threats" or "where the debtor signed a modification agreement or turned over the deed to the property and the creditor continued to demand payment." *Id.* at 312 (quoting *Lovegrove v. Ocwen Loan Servicing, LLC*, No. 7:14cv00329, 2015 WL 5042913, at *13 (W.D. Va. Aug. 26, 2015)). The court affirmed the district court's grant of summary judgment to Ocwen on the FDCPA claim. *Id.*

Bayview's monthly account statements are similar to the communications that the *Lovegrove* Court found were not an attempt to collect a debt. Bayview's monthly statements were informational and non-threatening. Like the *Lovegrove* monthly statements, they included account and payment information, such as the principal balance, payment dates, the next payment due date, and a payment coupon. S*ee, e.g.*, ECF 85-4, at 171–73 (Jan. 7, 2021 monthly statement). And, as in *Lovegrove*, Bayview's monthly statements included a disclaimer that notified Palazzo, a debtor

in bankruptcy, that the statements were not attempt to collect a debt. In fact, the language in Bayview's monthly statements makes that point more clearly than some of the communications in *Lovegrove*. The disclaimer in Bayview's monthly statements provides in relevant part: "Our records show that you are a debtor in bankruptcy. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt against you." *See, e.g.*, *id* at 171. And Bayview's monthly statements did not include the language in some of the *Lovegrove* communications that "[t]his communication is a debt collector attempting to collect a debt." *See* 666 F. App'x at 310. The disclaimers in Bayview's monthly statements make the statements even less likely to be construed as a demand for payment than the correspondence in *Lovegrove*. As in *Lovegrove*, even if the monthly statements could be viewed as a demand for payment, the disclaimer sufficiently notified Palazzo, a debtor in bankruptcy, that Bayview was providing an account summary and not demanding payment. Palazzo is presumed to have read the monthly statements with care. *See id.* at 312 n.5. The statements were not an attempt to collect a debt under the FDCPA.

Palazzo argues that *Lovegrove* is a "poorly reasoned unpublished decision based upon [a] materially different factual and legal posture." ECF 88, at 9. *Lovegrove* may be an unpublished, non-binding decision, but it can be persuasive authority if its reasoning is persuasive. *See Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (explaining that unpublished Fourth Circuit decisions are "entitled only to the weight they generate by the persuasiveness of their reasoning") (quoting *Hupman v. Cook*, 640 F.2d 497, 501 & n.7 (4th Cir. 1981)); *see Blue v. United Way of Cumberland Cnty.*, 41 F. Supp. 3d 470, 472–73 (E.D.N.C. 2014) (considering an unpublished Fourth Circuit decision "persuasive authority" due to "the similarity of the facts alleged" and "the strength of the [unpublished opinion's] reasoning"); *Koontz v. S.N.*

*Servicing Corp.*, --- F. Supp. 3d ----, No. 5:23-CV-363, 2024 WL 1344655, at *6 (N.D. W. Va. Feb. 26, 2024) (applying *Lovegrove*'s reasoning because "[t]he facts at issue in this case are highly analogous to those underlying the Fourth Circuit's unpublished, yet persuasive, decision"). The Court finds that *Lovegrove* was a sound application of the *In re Dubois* commonsense inquiry into whether communications from a loan servicer were attempts to collect a debt under the FDCPA. *Lovegrove*'s reasoning was strong, and this Court finds it persuasive.

*Lovegrove* is not an anomaly. Other circuits, in published opinions, have considered factors substantially similar the commonsense inquiry factors in *In re Dubois* and held that communications to debtors, similar the *Lovegrove* communications, were not attempts to collect a debt. *See, e.g.*, *Grden*, 643 F.3d at 173 (letter with a "ledger card" that "stated a balance 'due'" still "did not demand payment or threaten any consequences if [plaintiff] did not pay"); *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388–89 (7th Cir. 1998) (mortgage servicers' letter that "does not 'demand' any payment whatsoever, but merely informs the [the plaintiffs] about 'the current status' of their account" with "due dates listed in the letter [that] are all prospective" was not "communication related to 'the collection' of a debt.'")).

Another district court in the Fourth Circuit adopted the *Lovegrove* Court's reasoning in a similar case earlier this year. In *Koontz v. S.N. Servicing Corp.*, the Northern District of West Virginia considered whether letters from a debt collector with a lien interest on a Chapter 7 bankruptcy filer's property were an attempt to collect debt under the FDCPA. 2024 WL 1344655, at *5–7. The court determined that the letters were not an attempt to collect debt because the letters contained "*clear disclaimers* indicating that they are not an attempt to collect a debt." *Id.* at *6–7 (quoting *Lovegrove*, 666 F. App'x at 312). The disclaimers were similar to Ocwen's disclaimers in *Lovegrove* and Bayview's disclaimers. Two of the letters in *Koontz* stated, in all capital letters,

18

"if you have previously received a discharge in bankruptcy and this debt was not reaffirmed, this correspondence is not and should not be construed to be an attempt to collect such a debt as your personal liability, but is instead a step in the enforcement of a mortgage lien against your property."

*Id.* at *3. One of the letters also stated:

> If you are currently in bankruptcy or have received a discharge in bankruptcy, this notice is not intended as an attempt to collect a debt as a personal liability, but is solely an effort to retain whatever rights we hold in the property that secures the debt, as evidenced by the security instrument.

*Id.* In concluding that the letters were not attempts to collect debt, the *Koontz* Court noted that the facts of the case were "highly analogous to those underlying the Fourth Circuit's unpublished, yet persuasive, decision in *Lovegrove*," and determined the disclaimers "make clear" that the defendant "was *not* attempting to collect a debt." *Id.* at *6. Just as the *Koontz* Court found *Lovegrove*'s reasoning persuasive, so does this Court.

Palazzo argues *Lovegrove* is distinguishable. He points out that the *Lovegrove* plaintiff was a Chapter 7 petitioner whose obligations under a promissory note to a bank had been discharged, whereas Palazzo was a Chapter 13 bankruptcy petitioner whose obligations on his mortgage had not been discharged. ECF 88, at 9 & n.7. This distinction is immaterial. Palazzo received the monthly statements when he was in bankruptcy. The disclaimer, featured prominently at the top of the first page, advised Palazzo that, because he is "a debtor in bankruptcy," the statements were "for informational and compliance purposes only." *See, e.g.*, ECF 87-1, at 21. By its plain and clear language, the disclaimer in the monthly statements applied to Palazzo's circumstances.

To be sure, a debt collector's statement that the correspondence is an attempt to collect a debt does not necessarily make it so under the FDCPA. *See Boosahda*, 462 F. App'x at 334 (statement that a debt collector is "attempting to collect a debt" will "not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive

significance" (quoting *Gburek*, 614 F.3d at 386 n.3)). The inverse is true. A statement that the correspondence is not an attempt to collect a debt does not necessarily allow the debt collector to avoid liability under the FDCPA. Whether debt collector correspondence is an attempt to collect a debt turns on the language in the correspondence and other case-specific facts. Here, the language in Bayview's monthly statements notified Palazzo that, under his circumstances, the statements were not attempts to collect a debt.

Palazzo argues that mortgage statements can be attempts to collect debt. ECF 88, at 9–10. For support, he cites *Hawthorne v. Rushmore Loan Management Services, LLC*, No. 20-cv-393 (RDM), 2023 WL 6388928 (D.D.C. Sept. 29, 2023). In *Hawthorne*, a mortgage servicer sent communications to a debtor about the status of her mortgage loan. 2023 WL 6388928, at *8–9. In an October 2019 letter, the mortgage servicer informed Hawthorne about changes to its "escrow analysis" and alerted her that "the surplus amount will not be refunded or credited against the next year's escrow payments on the loan unless the subject loan was current at the time [the servicer] conducted the escrow account analysis." *Id.* at *9. In a mortgage statement, the mortgage servicer advised Hawthorne that "Rushmore Loan Management Services LLC is a Debt Collector, who is attempting to collect a debt," and then identified the amounts Hawthorne owed, including contested landscaping service fees. *Id.* The *Hawthorne* Court applied the test from *In re Dubois* to the communications. *Id.* at *8. Noting it was a "close question," the court concluded that "a reasonable jury could find that the October 2019 letter contained an inducement to settle a debt," because the letter suggested "that any 'surplus amount' held in escrow might be lost to Hawthorne if she was not 'current' on her payments." *Id.* at *9. As to the mortgage statement, the court did not find it was an attempt to collect debt. It noted, however, that the mortgage statement "might also qualify as communications from Rushmore to Hawthorne made 'in connection with the

collection of a[ ] debt.'" *Id.* (quoting 15 U.S.C. § 1692e). Ultimately, the court determined that the question of whether the mortgage servicer had "made representations to Hawthorne in connection with the collection of a debt" could go to a jury. *Id.* at *10.

*Hawthorne* is not helpful to Palazzo. The court did not conclude the monthly mortgage statements were attempts to collect a debt. Even though the court said they "might also qualify" as communications made in connection with debt collection, the mortgage statements in *Hawthorne* are materially different than Bayview's monthly statements. Unlike the statements in *Hawthorne*, Bayview's statements did not say that Bayview "is a Debt Collector, who is attempting to collect a debt." *Id.* at *9. In fact, Bayview's statements said they were "not an attempt to collect a debt against you." *See, e.g.*, 87-1 at 21. As for the letter the *Hawthorne* Court concluded could be an attempt to collect a debt, it also differs from Bayview's monthly mortgage statements. Unlike the letter, nothing in Bayview's monthly statements can reasonably be read as "an inducement to settle a debt." *See Hawthorne*, 2023 WL 6388928, at *9.

Palazzo cites another out-of-circuit case, *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260 (11th Cir. 2022), to support his position that Bayview's mortgage statements were attempts to collect a debt. In *Daniels*, the Eleventh Circuit held that the FDCPA plaintiff plausibly alleged monthly mortgage statements were "an attempt to collect a debt" because the statements included a delinquency notice, a disclaimer that the statements were "an attempt to collect a debt," a payment due date and late fee description, a payment coupon, and payment instructions. *Id.* at 1268. The *Daniels* Court emphasized that it was "not hold[ing] that the statements are, as a matter of law, communications in connection with the collection of a debt." *Id.* at 1268 n.3. When "[v]iewed holistically," the court said, the mortgage statements were "plausibly 'related to debt collection.'" *Id.* at 1268 (quoting *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211,

1217 (11th Cir. 2012)). *Daniels* stands for the uncontroversial proposition that a monthly mortgage statement may be an attempt to collect a debt under the FDCPA. *Daniels* did not involve a debtor in bankruptcy, and the statements did not include a statement that they were sent for informational purposes and not to collect a debt. *Daniels* sheds no light on whether the monthly mortgage statements Bayview sent to Palazzo were an attempt to collect a debt.

Bayview's monthly mortgage statements were not attempts to collect a debt. Bayview sent the mortgage statements to Palazzo because Bayview serviced Palazzo's home mortgage loan. The objective purpose of the statements was to inform Palazzo, on a monthly basis, about the status of his loan. The statements did not demand payment. The language was not threatening. And most importantly, the statements prominently featured a disclaimer that informed Palazzo they were not an attempt to collect a debt from anyone in bankruptcy. Under *In re Dubois*'s commonsense inquiry, Bayview's monthly mortgage statements were not attempts to collect debt under § 1692f.

*Payoff Statement*

At Palazzo's request, Bayview sent him a payoff statement on February 5, 2019. Palazzo argues the payoff statement was an attempt to collect sums he did not owe. ECF 85, at 14 ¶ 2, 16 ¶ 12.

Like the monthly statements, the payoff statement was not an attempt to collect debt. On the first page, the statement lists the total unpaid principal balance, interest, "Escrow/Impound Overdraft," suspense balance, unpaid late and NSF charges, a recoverable corporate advance balance, and legal fees and costs. The statement advises Palazzo that "[t]his loan is due for the July 01, 2017 payment" and that Palazzo would have to pay $136,870.05 to "pay [the] loan in full." ECF 87-1, at 19. The statement also informs Palazzo that his "1st unpaid principal balance will accrue interest at $13.44 per day from March 05, 2019 to the date sufficient funds are received in

this office," that "[i]ssuance of this statement does not suspend the contract requirements to make the mortgage payment when due," and that "[l]ate charges and other penalties may be assessed according to the loan documents." *Id.* The statement does not demand payment immediately or by a certain date, and the amounts included in the statement cannot be reasonably viewed as a demand for payment. *See id.* The payoff statement does not list Palazzo's monthly obligation or include a payment coupon. *See id.* The "animating purpose" of the payoff statement clearly was to provide Palazzo with information on his mortgage account, not to demand payment. The fact that Bayview sent this statement at Palazzo's request is yet another reason why the payoff statement is not an attempt to collect a debt. *See Grden*, 643 F.3d at 173 ("But for us the decisive point is that Leikin made the balance statements only after Grden called and asked for them.").

On the second page, the payoff statement says:

Bayview Loan Servicing, LLC is a debt collector. This letter is an attempt to collect a debt and any information obtained will be used for that purpose. To the extent that your obligation has been discharged or is subject to an automatic stay of bankruptcy this notice is for compliance and informational purposes only and does not constitute a demand for payment or any attempt to collect such obligation.

ECF 87-1, at 20. If the statement was read with care—as the law presumes it was—Palazzo should have understood from this paragraph that Bayview was not attempting to collect a debt from him. *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996) (when evaluating FDCPA claims, courts "presume[e] a basic level of understanding and willingness to read with care"). He knew he was in bankruptcy and his obligation was subject to an automatic stay under 11 U.S.C. § 362(a). For Palazzo, the payoff statement was "for compliance and informational purposes only and [did] not constitute a demand for payment or an attempt to collect such obligation." ECF 87-1, at 20. Under Palazzo's circumstances, this was a "clear and unequivocal disclaimer." *Lovegrove*, 666 F. App'x at 311; *see also Gburek*, 614 F.3d at 386 & n.3 (language in letter to a debtor

"identifying [the letter] as an attempt to collect a debt" did not necessarily mean letter was "in connection with an attempt to collect a debt").

Under the commonsense inquiry, Bayview's February 5, 2019 payoff statement was not an attempt to collect debt. Bayview sent the statement to Palazzo at his request. The statement's objective purpose was to provide Palazzo with the mortgage loan account information that he requested. The disclaimer made clear that the payoff statement was not an attempt to collect a debt if the debt was subject to an automatic stay in bankruptcy. The statement cannot reasonably be read as a demand for payment from Palazzo. The payoff statement was not an attempt to collect debt.

*1098 Forms*

Bayview sent Palazzo 1098 Forms for tax years 2019 and 2020. Palazzo argues that Bayview violated § 1692f by sending the forms because they "ambiguously included hundreds of thousands of dollars of fees and charges associated with Palazzo's Loan which had never been expressly authorized or permitted for collection" and failed to "disclose [that] the fees were so-called corporate advances Palazzo did not owe and were actually paid by another." ECF 85, at 14 ¶ 4. Palazzo points specifically to amounts identified on the form as attorney fees, legal costs, and property inspection fees. *Id.* (citing ECF 85-1, at 11 ¶¶ d–e).

The 1098 Forms that Bayview sent to Palazzo were not attempts to collect debt. The source of the form was the Internal Revenue Service, and the form's objective purpose, clearly stated at the top, was to provide "important tax information." ECF 85-2, at 22, 25. That important tax information included the interest that Palazzo paid on his mortgage for the relevant tax year. Palazzo could report the interest he paid in his taxes. The amounts that Palazzo contests—attorney fees, legal costs, and property inspection fees—are listed in the account transaction history, but

the form does not demand payment or set a due date for those amounts. The account transaction history is just that: a history of transactions on the mortgage from the prior year. The 1098 Forms that Bayview sent Palazzo were not attempts to collect debt.

The monthly statements, payoff statement, and 1098 Forms were not attempts to collect debt. When Bayview sent this correspondence to Palazzo, Bayview did not violate § 1692f.

### b.  Bayview's Other Conduct

Palazzo argues Bayview violated § 1692f in several other ways. He says Bayview engaged in "unfair or unconscionable means to attempt to collect" by failing to implement the bankruptcy order, ECF 85, at 13 ¶ 1; by holding payments in suspense, *id.* at 14 ¶ 6; by not sending Palazzo statements during the course of litigation, *id.* at ¶ 7; by failing to cash Palazzo's October 2021 mortgage payment check, *id.* at 15 ¶ 8 (citing ECF 85-1, at 14 ¶ Y.j); by failing to notify Palazzo that his mortgage servicing transferred to RightPath, *id.* at 15 ¶ 9; by not timely forwarding payments to RightPath when Palazzo continued to pay Bayview after servicing transferred, *id.*; and by providing an incorrect address and accounting information to RightPath, *id.* at 15–16 ¶¶ 10–11.

None of this conduct, on its own, was debt collection activity or an attempt to collect a debt. Perhaps Palazzo believes some of the conduct (failing to implement the bankruptcy court's order into its mortgage servicing systems, holding payments in suspense, and failing to cash his check) were links in the chain of events that led Bayview to include amounts in its monthly mortgage statements that Palazzo contests or to exclude amounts in the statements that Palazzo thinks should have been included. A "step to ultimately collecting the debt" can constitute a debt collection activity under the FDCPA. *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 125 (4th Cir. 2014) (quoting *Powell v. Palisades Acquisition XVI, LLC*, No. RDB-13-219, 2014

WL 334814, at *5 (D. Md. Jan. 29, 2014), *aff'd in part and vacated in part by Powell*, 782 F.3d

119)). In *Powell*, the Fourth Circuit held that filing an assignment of judgment in an action to

enforce a judgment was debt collection activity. *Id.* Even though the defendant had to "take

additional steps" to enforce the judgment, the court found the filing of an assignment of judgment

was "crucial" to accessing "court-sanctioned enforcement procedures." *Id.* The filing of the

assignment of judgment was part of "*an attempt* to collect the judgment debt" and was actionable

debt collection activity under the FDCPA. *Id.* at 124.

Unlike in *Powell*, none of the conduct that Palazzo argues violated § 1692f was part of an

attempt collect a debt, let alone a "crucial" part. Bayview's purported failures and missteps might

have led to Bayview to issue what Palazzo believes are inaccurate statements, but the Court already

has determined that these statements were not attempts to collect debt. So the failures and missteps

that led Bayview to send inaccurate statements were not part of an attempt to collect a debt.[2]

---

[2] In his motion for partial summary judgment, Palazzo argues that Bayview violated several statutory and regulatory requirements for mortgage servicers, such as requirements to promptly credit payments received, ECF 85, at 15 n.8; to provide accurate payoff statements, *id.* at 14 n.6; to provide monthly mortgage statements, *id.* at 15 n.7; to send a notice when mortgage servicing transferred, *id.* at 14 n.9; and to provide a debtor's mailing address when servicing transferred, *id.* at 15–16 n.10. Yet in his reply, Palazzo insists that he "is not asserting a violation of § 1692f based on the violation of any other Federal statute . . . ." ECF 88, at 12. Even so, on the next page of his reply, Palazzo says: "[C]onduct in violation of any statutory duty that applies to a party has routinely been found to be violative of the FDCPA, MCPA, or MCDCA." *Id.* at 13. The cases Palazzo cites for that proposition do not apply to Bayview because they involved unlicensed debt collection. *See Hauk v. LVNV Funding, LLC*, 749 F. Supp. 2d 358, 366 (D. Md. 2010) (denying motion to dismiss § 1692f claim where defendant violated state law by filing debt collection suits without a mandatory debt collection license); *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 730 (D. Md. 2011) (lawsuit filed by unlicensed debt collector violated FDCPA because it was "a threat to take . . . action that cannot legally be taken" (quoting 15 U.S.C. § 1692e(5)); *Fontell v. Hassett*, 870 F. Supp. 2d 395, 410 (D. Md. 2012) (debt collection notices sent by unlicensed debt collector amounted to "[c]laim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist" under MCDCA § 14-202(8)). Bayview is not an unlicensed debt collector, and the regulatory violations Palazzo cites are not violations of mandatory licensing laws and do not involve debt collection activity.

Palazzo also argues that Bayview violated § 1692f when it transferred loan servicing responsibilities to another loan servicer, RightPath. He argues Bayview failed to notify him about the transfer, sent notice of the transfer to Bayview's outside counsel (and not to him or his counsel), gave RightPath inaccurate contact and accounting information, and delayed forwarding payments to RightPath that Palazzo continued to send to Bayview. ECF 85, at 15 ¶¶ 9–11.[3]

Palazzo does not explain how these actions are debt collection activity under § 1692f. And Palazzo does not cite any authority to support his position that not providing correct contact information to RightPath and not forwarding his mortgage payments to RightPath in a timely manner are debt collection activity. At least one court has held that providing inaccurate information to another debt servicer is not an attempt to collect debt under § 1692f. *See Richards v. New Rez LLC*, No. ELH-20-1292, 2022 WL 657568, at *20 (D. Md. Mar. 4, 2022) (rejecting an argument on a motion to dismiss that "[a] debt collector should not be able [to] escape its legal duties under the FDCPA by failing to update borrower addresses in its files so the borrowers have the information they are required to have in relation to their mortgage loans."); *cf. id.* ("The Court is unaware of recent, reported authority that suggests that a FDCPA claim can be predicated solely

---

[3] The evidence Palazzo cites does not support his other arguments concerning Bayview's conduct when mortgage servicing transferred to RightPath. In the "facts" Palazzo identifies to support his argument that Bayview gave RightPath inaccurate accounting information, he merely states: Bayview "provided [RightPath] with knowingly false accounting data which required RightPath to correct the sums [Bayview] represented were due and owing on the mortgage account by Palazzo." ECF 85-1, at 15 ¶ Y(m). The only evidence he cites is a letter from RightPath to Palazzo, ECF 85-1 at 15 nn.60–61 (citing ECF 85-4, at 254), and a declaration from his wife, *id.* (citing ECF 85-2, at 149 ¶ 32) (Decl. C. Palazzo). But neither the letter nor his wife's declaration show that Bayview "represented" improper amounts "due and owing" on Palazzo's mortgage account. Palazzo's contention that Bayview "continued to accept and cash Palazzo's timely payments to it *since it knew* it had failed to disclose to him the transfer" is not supported by any evidence whatsoever. ECF 85, 15 at ¶ 9 (emphasis added). In fact, Palazzo has submitted evidence that undermines his position that Bayview was "cash[ing] Palazzo's timely payments," ECF 85, at 13, by citing to "RightPath correspondence and statements showing receipt of payments not made to it but to [Bayview]," ECF 85-1, at 15 n.62.

on an allegation that a debt collector failed to use adequate procedures and practices to ensure the accuracy of its loan data."). Bayview did not attempt to collect a debt when it gave RightPath the wrong contact information for Palazzo's account.

Bayview also did not attempt to collect a debt when it did not timely forward Palazzo's mortgage payments to RightPath. There is no dispute that Bayview sent the payments to RightPath and RightPath received them. ECF 85-1, at 15 n.62 (citing to "RightPath correspondence and statements showing receipt of payments not made to it but to [Bayview]"). There also is no dispute that, after Bayview transferred loan servicing to RightPath, Bayview did not send Palazzo any communications or engage in actions that suggest Bayview was seeking payment from him. *See* ECF 87, at 15 ¶ 7 ("[Bayview] just stopped sending any statements to Palazzo during this litigation all together . . . ."). Thus, Bayview's conduct during and after mortgage servicing transferred to RightPath was not debt collection or an attempt to collect debt.

The undisputed facts show that the Bayview's communications and other conduct were not debt collection or attempts to collect debt.[4]  Because Palazzo cannot establish that Bayview collected a debt or attempted to collect a debt, his § 1692f claim fails as a matter of law. Palazzo's

---

[4] Palazzo also cites *Alexander v. Carrington Mortgage Services*, 23 F.4th 370 (4th Cir. 2022), throughout his briefing. *See, e.g.*, ECF 85, at 13, 18–19, 22; ECF 88, at 12. In *Alexander*, two plaintiffs sued a mortgage servicing company for charging a $5 "convenience fee" when they made online mortgage payments. 23 F.4th at 373. Each of the plaintiffs "incurred the $5 fee at least nine times in 2018 or 2019." *Id.* The Fourth Circuit concluded that the mortgage servicing company violated § 1692f(1) by "charg[ing] an 'amount' that was not 'expressly authorized by the agreement creating the debt or permitted by law.'" *Id.* at 374 (quoting 20 U.S.C. § 1692f(1)). The court compared the impermissible online convenience fee to improper service charges and fees charged for accepting mortgage payments over the phone. *Id.* at 377–78. The court found that collecting the online convenience fee constituted the unlawful "collection" of unauthorized amounts by § 1692f(1). *Id.* at 377. *Alexander* is not on point. Palazzo does not accuse Bayview of the conduct at issue in *Alexander*. Palazzo accuses Bayview of the conduct at issue in *Lovegrove*— sending mortgage statements and other correspondence that purported to attempt to collect a debt. *Lovegrove*, not *Alexander*, is the most relevant Fourth Circuit case on Palazzo's § 1692f claim.

motion for summary judgment on his FDCPA claim under § 1692f is denied. Bayview's motion for summary judgment on the § 1692f claim is granted.

### 2.   Other FDCPA Claims

Bayview moved for summary judgment on the other alleged FDCPA violations in Count IV of Palazzo's second amended complaint violations of §§ 1692c, 1692d, and 1692e. Once Bayview made its initial showing that there were "no genuine issue of material fact," Palazzo, the non-moving party, had the responsibility to demonstrate "specific facts showing that there is a genuine issue for trial" on these FDCPA violations. *Bandy v. City of Salem*, 59 F.4th 705, 709–10 (4th Cir. 2023) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). He did not make that showing. In fact, Palazzo did not respond at all to Bayview's arguments on these alleged FDCPA violations. Instead, Palazzo moved for summary judgment only on his § 1692f claim—a tactic he deployed "for ease of the Court and the Parties." ECF 85, at 18. Doubling-down on his § 1692f claim, Palazzo stated that if the Court grants him partial summary judgment on the claim, "the remaining FDCPA claims he has asserted would be unnecessary for further adjudication." *Id.* at 16.

"A plaintiff who fails to respond to an argument for summary judgment is deemed to have abandoned the claim." *Rogers v. Eagle All.*, 586 F. Supp. 3d 398, 448 (D. Md. 2022); *Satcher v. Univ. Ark. at Pine Bluff Bd. of Trs.*, 558 F.3d 731, 735 (8th Cir. 2009); *see also Penn. Nat'l Mut. Casualty Ins. Co. v. Kirson*, 525 F. Supp. 3d 628, 634 (D. Md. 2021) ("In their briefs in opposition to the Motions, Defendants fail to oppose Penn National's Motion on this issue and thus have conceded the point."). When a court finds the plaintiff has abandoned a claim, the court may grant summary judgment on the abandoned claim. *See, e.g., Grant-Fletcher v. McMullen & Drury, P.A.*, 964 F. Supp. 2d 514, 525–26 (D. Md. 2013) (granting summary judgment on abandoned FDCPA

claims because non-moving party did not address the arguments for summary judgment on those claims in the opposition brief); *Mentch v. E. Sav. Bank, FSB*, 949 F. Supp. 1236, 1247 (D. Md. 1997) (granting summary judgment on harassment claim because non-moving party abandoned the claim by failing to address it in the opposition and reply); *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 419 (D. Md. 2015) (granting summary judgment on Title VII disparate treatment claim because the plaintiff had abandoned the claim by not addressing her former employer's arguments on the claim in her opposition); *cf. Ridgell v. Colvin*, No. DKC-10-3280, 2013 WL 952253, at *9 (D. Md. 2013) (granting summary judgment "[b]ecause [plaintiff] does not reference § 2302(b)(2), § 2302(b)(8), or § 2302(b)(12) in her opposition" and she therefore "abandoned her [] claim to the extent it relies on these provisions"). The party opposing summary judgment must say more than merely passing remarks in support of his position. *See DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. Connect Ins. Agency, Inc.*, No. C14-5880JLR, 2016 WL 631574, at *25 (W.D. Wash. Feb. 16, 2016) ("A party waives or abandons an argument at the summary judgment stage by failing to provide more than a passing remark in support of its position."); *cf. Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017) ("A party waives an argument by failing to present it in its opening brief or by failing to 'develop [its] argument'—even if [its] brief takes a passing shot at the issue.") (quoting *Brown v. Nucor Corp.*, 785, F.3d 895, 923 (4th Cir. 2015)).

The Court finds that Palazzo has abandoned his claims against Bayview under §§ 1692c, 1692d, and 1692e of the FDCPA because he did not respond to Bayview's arguments for summary judgment on them. In his opposition to Bayview's motion, Palazzo focuses almost exclusively on his § 1692f claim and all but ignores his other FDCPA claims. In his opposition, he does not mention his § 1692d claim at all. Palazzo purports to respond to Bayview's arguments on his

§ 1692c claim, but his response reaffirms that he "seeks a judgment of liability only on his claims pursuant to 15 U.S.C.A. § 1692f." ECF 88, at 12. Palazzo has abandoned his claims under §§ 1692c and 1692d.

Palazzo also has abandoned his claim under § 1692e. Section 1692e states "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Like § 1692f, § 1692e enumerates prohibited practices "[w]ithout limiting the general application of" the prohibition. *Id.* Palazzo makes two passing references to § 1692e in his opposition brief. *See* ECF 88, at 4, 10. But his passing references do not address Bayview's arguments for summary judgment on his § 1692e claim. He never explains how Bayview used a "false, deceptive, or misleading representation or means in connection with the collection of any debt," identifies which of the enumerated prohibited practices under § 1692e that Bayview committed or offers another theory of liability outside of the non-exhaustive list. The Court will not speculate or make his arguments for him. Palazzo has abandoned his § 1692e claim.

Palazzo alleged several FDCPA violations in his second amended complaint. At summary judgment, he focuses solely on his § 1692f claim. He makes no substantive arguments in support of his §§ 1692c, 1692d, or 1692e claims. Bayview is entitled to summary judgment on Palazzo's FDCPA claims under §§ 1692c, 1692d, and 1692e.

*     *     *

The undisputed material facts establish that Palazzo cannot succeed on his FDCPA § 1692f claim as a matter of law. Bayview's conduct was not debt collection or an attempt to collect a debt. Palazzo's motion for summary judgment on his claim under § 1692f is denied. Bayview's motion

for summary judgment on Palazzo's § 1692f claim is granted. Summary judgment is also granted to Bayview on the remaining FDCPA claims.

### B.  Maryland Statutory Claims

Now that the FDCPA claims are not in the case, the only remaining claims are state law claims under the MCDCA and the MCPA. Palazzo alleges the Court has diversity jurisdiction over these claims. ECF 56, at 6 ¶ 11. This Court has diversity jurisdiction, with certain class action exceptions not relevant here, when there is "complete diversity among the parties, meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant" and the amount in controversy exceeds $75,000. *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)).  For purposes of determining the parties' citizenship, a natural person is deemed a citizen of the State in which he or she is domiciled. *Axel Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660, 663 (4th Cir. 1998). A corporation is deemed a citizen "of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). A limited liability company (LLC) "is an unincorporated association, akin to a partnership for diversity purposes." *Gen. Tech. Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 121 (4th Cir. 2004). An LLC is deemed a citizen of each state where its members are citizens. *Id*.; *see also Clephas v. Fagelson, Shonberger, Payne & Arthur*, 719 F.2d 92, 93 (4th Cir. 1983) (unincorporated association is a citizen of any state in which any of its members is a citizen).

Palazzo is a Maryland citizen. *See* ECF 56, at 7 ¶ 13.b. M&T, a state-chartered bank headquartered in New York, ECF 69 (M&T Loc. R. 103.3 Discl.), with its principal place of business in New York, ECF 56, at 8 ¶ 16.a; ECF 57, at 5 ¶ 16, is a New York citizen. Bayview is an LLC. Its citizenship is that of all its members. Palazzo alleges Bayview is "a Delaware limited

liability company owned and controlled by a family of companies including Bayview Asset Management, LLC, Bayview Asset Management Holdings, LLC, Bayview Financial Holdings, LP, and Bayview Financial Management Corporation." ECF 56, at 7 ¶ 14.a. In its Local Rule 103.3 statement disclosing corporate interest, Bayview represents that it "is a Delaware limited liability company, and is wholly owned by Bayview Asset Management, LLC, a Delaware limited liability company." ECF 68. Given these potentially conflicting statements, the Court cannot determine who owns Bayview. Even if Bayview's representations in its Local Rule 103.8 statement are accurate, Bayview did not identify the members of Bayview Asset Management, LLC, or the citizenship of the members.[5] The Court needs this information to "trace [Bayview's] citizenship through these layered entities." *Capps v. Newmark S. Region, LLC*, 53 F.4th 299, 302 (4th Cir. 2022) (per curiam) (analyzing citizenship of an LLC wholly owned by another LLC, which was wholly owned by a Limited Partnership (LP), a partner of which was another LP).

Palazzo bears the burden of establishing subject matter jurisdiction over his claims. *Sligh v. Doe*, 596 F.2d 1169, 1170 (4th Cir. 1979) ("[A] plaintiff seeking relief in a federal court has the burden of alleging and proving the jurisdictional facts."); *see also Robb Evans & Assocs.*, 609 F.3d 359, 362 (4th Cir. 2010) ("The burden of establishing subject matter jurisdiction is on . . . the party asserting jurisdiction."). If Palazzo wants to pursue his MCDCA and MCPA claims in this Court, he must establish the Court has diversity jurisdiction over them. By October 21, 2024, Palazzo must inform the Court whether he wants to pursue these claims in this Court. If he does want to pursue them here, he must identify, by that date, Bayview's citizenship so that the Court may determine whether it has diversity jurisdiction over the remaining state law claims.

---

[5] In the disclosure statement required under Local Rule 103.3, Bayview, an LLC established under state law, is required to include "[t]he identity of all members . . . and in cases based on diversity jurisdiction, the state of citizenship of each member." Loc. R. 103.3 (D. Md. 2023).

If the Court does not have diversity jurisdiction over the state law claims, the Court would decline to exercise supplemental jurisdiction over them. A federal court may exercise supplemental jurisdiction over state law claims even after the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Or a court may decline to exercise supplemental jurisdiction. Federal law commits the decision to the court's discretion. *See Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617–18 (4th Cir. 2001). In the exercise of this discretion, courts focus on "the values of judicial economy, convenience, fairness, and comity." *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also Hinson*, 239 F.3d 611, 617–18. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon*, 484 U.S. at 350 n.7; *see also Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) ("'[G]enerally, when a district court dismisses all federal claims in the early stages of litigation'—e.g., at the summary-judgment stage—'it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice.'" (quoting *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018)). The Court therefore denies, without prejudice, summary judgment to both parties on the MCDCA and MCPA claims in Count III.

## IV.    Conclusion

Palazzo's motion for partial summary judgment is denied. The defendants' motion for summary judgment on the FDCPA claims in Count IV is granted. The motions for summary judgment on the MCDCA and the MCPA claims in Count III are denied without prejudice. By October 21, 2024, Palazzo must inform the Court whether he wants to pursue his Maryland law claims in this Court. If he does, Palazzo must identify by that date Bayview's citizenship so that the Court may determine whether it has diversity jurisdiction over the remaining state law claims.

A separate order follows.

Date: September 30, 2024

Deborah L. Boardman
United States District Judge